UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HUNG PHI LE (A-041-789-571),

Petitioner,

v.

CHRISTOPHER CHESTNUT, WARDEN, et al.,

Respondents.

No. 1:26-cv-7699 DC CSK

ORDER & FINDINGS & RECOMMENDATIONS

Petitioner Hung Phi Le (A-041-789-571), a citizen of Vietnam who is proceeding without counsel, filed a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] This habeas action concerns petitioner's re-detention. For the reasons that follow, the Court recommends that the petition for writ of habeas corpus be granted and petitioner be immediately released.

## I. FACTUAL BACKGROUND

Petitioner is a citizen of Vietnam. (ECF No. 7 at 7.) On January 24, 1990, petitioner entered the United States and was admitted as a lawful permanent resident. (Id. at 8.) On May 30, 2012, petitioner was taken into custody by U.S. Border Patrol. (Id. at 9.) Petitioner was

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

issued a Notice to Appear. (Id.) Respondents did not provide a copy of the Notice to Appear. Petitioner was then taken into custody by the Philadelphia Police Department due to two active arrest warrants. (Id.) Petitioner has a criminal history and has been convicted of different charges. (Id. at 21-36.) On August 9, 2012, an immigration judge ordered petitioner removed to Vietnam. (Id. at 12.) Petitioner was not removed, and on November 15, 2012, petitioner was released on an Order of Supervision. (Id. at 9.)

On July 28, 2026, petitioner reported to Seattle U.S. Immigration and Customs ("ICE") for his scheduled reporting under his Order of Supervision requirements. (Id. at 8.) Petitioner was arrested and taken into custody by immigration officials. (Id.) On July 28, 2026, petitioner was served with a Notice of Revocation of Release stating that petitioner's Order of Supervision issued November 15, 2012 was revoked pursuant to 8 C.F.R. § 241.4(1) because, "It is appropriate to enforce the removal order entered against you as ICE has the ability to effectual your removal," and "ICE is seeking a travel document to effect your expeditious removal to Vietnam." (Id. at 14-16.) Respondents submitted a form titled, "Alien Informal Interview Upon Revocation of Order of Supervision Under 8 C.F.R. § 241.4(1) and 8 C.F.R. § 241.13(i)." (Id. at 17.) This form indicates that on July 28, 2026, an ICE officer conducted an informal interview with petitioner in order to afford petitioner an opportunity to respond to the reasons for revocation of his Order of Supervision stated in the notification letter (Id.) The form indicates that petitioner did not make a statement, provide a written statement or provide any documents. (Id.)

## II. PROCEDURAL BACKGROUND

On September 21, 2026, petitioner filed his petition for writ of habeas corpus and a motion to appoint counsel. (ECF Nos. 1, 3.) On October 5, 2026, respondents timely filed an opposition to the petition. (ECF No. 7.) Petitioner did not file a reply. (See Docket.) Briefing is now complete.

## III. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality

of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV. DISCUSSION

Petitioner raises the following claims: (1) violation of the Fifth Amendment Due Process Clause; (2) third country removal violates the Fifth Amendment, 8 U.S.C. § 1231, the Convention Against Torture, Implementing Regulations and the Administrative Procedure Act; (3) third country removal is punitive banishment in violation of the Fifth and Eighth Amendments; and (4) petitioner's continued detention violates the Fifth Amendment Due Process Clause, 8 C.F.R. § 241.13 and the Administrative Procedure Act. (ECF No. 1 at 13-19.) In the answer, respondents claim that petitioner is detained under 8 U.S.C. § 1231(a)(6) to effectuate the final order of removal. (ECF No. 7 at 1-4.)

### A. Claim Four: Regulatory and Due Process Violations

In claim four, petitioner argues that his continued detention violates the Fifth Amendment Due Process Clause, 8 C.F.R. § 241.13 and the Administrative Procedure Act. (ECF No. 1 at 17-19.) In particular, petitioner argues that his detention violates 8 C.F.R. § 241.13(i)(2) because (1) ICE detained him without proof that there is a significant likelihood that he will be removed soon; (2) ICE failed to notify petitioner of the reasons for the revocation of his release; and (3) ICE failed to provide him with an informal interview promptly upon his return to custody. (Id. at 17-19.)

Pursuant to 8 U.S.C. § 1231(a)(1), the Attorney General of the United States shall remove a noncitizen within 90 days, which is referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A). The removal period begins on the latest of the following: (i) the date the removal order becomes administratively final; (ii) if the removal order is judicially reviewed and

a stay of removal is ordered, the date of the court's final order; or (iii) the date the noncitizen is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B). During the removal period, the noncitizen shall be detained. 8 U.S.C. § 1231(a)(2). If the noncitizen is not removed within the removal period, the noncitizen shall be released and subject to supervision with certain conditions. 8 U.S.C. § 1231(a)(3). Here, it is clear that the 90-day removal period has passed where petitioner was ordered removed on August 9, 2012. (ECF No. 7 at 12.) Respondents do not dispute that petitioner was last released from ICE custody in November 2012. (Id. at 9.)

Citing Zadvydas, respondents appear to argue that petitioner's detention under § 1231(a)(6) is presumptively reasonable because petitioner has been detained less than six months. (Id. at 3.) Zadvydas dealt with a noncitizen who had been detained and never released following a final order of removal. Zadvydas, 533 U.S. at 701. In that context, the Supreme Court held that once a noncitizen has been detained for six months and "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with sufficient evidence to rebut that showing." Id.

However, the burden-shifting framework from Zadvydas does not apply to petitioner's challenge to his re-detention. As another district court noted in a similar context, "[t]his case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in Zadvydas." Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025); see also Yan-Ling X. v. Lyons, 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025). As in Nguyen, "[t]his case is about ICE's authority to re-detain [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." Nguyen, 788 F. Supp. 3d at 149. "[T]his is not your typical first round detainment of an alien awaiting removal." Escalante v. Noem, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025). Petitioner was previously detained, then released on an Order of Supervision, and his 90-day removal period expired long ago. It is clear that petitioner has been detained beyond the expiration of the 90-day removal period.

A set of regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed. A noncitizen who has been released under an Order of Supervision "who violates any of the conditions of release may be

returned to custody . . . and may be continued in detention for an additional six months in order to affect the alien's removal, if possible[.]" 8 C.F.R. § 241.13(i)(1). A noncitizen's release may also be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2).

Respondents do not address petitioner's three arguments regarding why his detention violates 8 C.F.R. § 241.13(i). (See ECF No. 7.) This Court construes respondents' failure to address these arguments as a concession to these arguments. See Siang v. Chiang, 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) ("The court construes the government's failure to address this argument as a concession to petitioner's argument.").[2]

1. Changed Circumstances

The regulations at 8 C.F.R. § 241.13(i) apply to non-citizens in petitioner's situation who are released under an Order of Supervision with conditions of release. Those regulations indicate that when ICE revokes release to effectuate removal, "it is [ICE's] burden to show a significant likelihood that the alien may be removed." Escalante, 2025 WL 2206113, at *3; see also Roble v. Bondi, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future[.]"); Abuelhawa v. Noem, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future."). As the district court in Escalante found, "[i]mposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications." Escalante, 2025 WL 2206113, at *3. As discussed above, respondents do not address this claim and, thus, failed to meet their burden of demonstrating changed circumstances

[2] This Court recognizes that petitioner has a criminal history. (ECF No. 7 at 21-36.) Because the Court finds that ICE has failed to establish changed circumstances and failed to follow its own regulations, the Court does not reach whether ICE lawfully revoked petitioner's Order of Supervision based on violations of any conditions of release. The government may revoke petitioner's supervision and remove petitioner, but it must do so lawfully, following the requirements of the Constitution and its own regulations. It has failed to do so here.

indicating a significant likelihood of removal.

Although respondents did not address this claim, this Court observes that the Notice of Revocation of Release does not demonstrate that petitioner's removal is significantly likely in the reasonably foreseeable future. The Notice of Revocation of Release states that ICE is seeking a travel document to effect petitioner's removal to Vietnam. (ECF No. 7 at 14.) Respondents fail to explain why a travel document from Vietnam was not previously obtained or why Vietnam is likely to issue a travel document for petitioner in the reasonably foreseeable future. See Yan-Ling, 2025 WL 3123793, at *4 (citing Hoac v. Becerra, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025)) ("Respondents have not provided any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around."). Respondents do not explain whether removals to Vietnam are common, do not identify what considerations the Government of Vietnam might take into account when deciding whether to issue a travel document, and do not explain whether the Government of Vietnam will look favorably on petitioner's case. See Yang-Ling, 2025 WL 3123793, at *3 (citing Liu v. Carter, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025) (finding that the respondents had not shown that removal was reasonably foreseeable where they did not provide evidence why seeking travel documentation was more likely to be successful this time around or describe other actions taken to make the petitioner's removal more likely)). The phrase "significant likelihood" requires something more than a mere possibility that removal will occur. Evidence that "there is at least some possibility" that the designated country of removal "will accept Petitioner at some point…is not the same as a significant likelihood that he will be accepted in the reasonably foreseeable future." Nguyen v. Scott, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025). This Court also observes that the Form I-213 states that, "Per management and headquarters, the Non-Detained Unit has been informed that Vietnam has been issuing travel documents. Per the new change of Vietnam being able to work on travel documents management signed and issued a I-200 Warrant of Arrest to take [petitioner] back into custody to work on travel document and remove to Vietnam." (ECF No. 7 at 8.) This Court finds that these statements in the Form I-213 do not demonstrate that there is a significant likelihood of

petitioner's removal to Vietnam in the reasonably foreseeable future.

This Court also observes that Section 241.13(i)(2) requires that the determination that changed circumstances will result in the noncitizen's removal in the reasonably foreseeable future is made *before* the removable noncitizen has had their release revoked. See Duong v. Charles, 2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025); Tran v. Noem, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025); Sphabmixay v. Noem; 2025 WL 3034071, at *2 (S.D. Cal. Oct. 30, 2025). Here, the record does not show that a changed-circumstance determination was made at or before petitioner's re-detention on July 28, 2026. To the extent the changed circumstance could be based on the travel document request after petitioner's re-detention, petitioner's re-detention violates § 241.13(i)(2) because a changed-circumstance determination was not made at or before petitioner's re-detention on July 28, 2026.

2. Compliance with Implementing Regulations

"ICE, like any agency, 'has the duty to follow its own regulations.'" Rombot v. Souza, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting Haoud v. Ashcroft, 350 F.3d 201, 205 (1st Cir. 2003); see Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons, 954 F.3d 118, 130 (2d Cir. 2020) ("Under deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations.").

When revoking petitioner's release pursuant to § 241.13(i)(2) based on changed circumstances, the petitioner "must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition, as allowed under § 241.13(i)(3)." Sarail v. Bondi, 803 F. Supp. 3d 775, 787 (D. Minn. Sept. 3, 2025). Petitioner claims that ICE failed to notify him of the reasons for the revocation of his release. (ECF No. 1 at 17.) As discussed above, by failing to address this claim, respondents concede petitioner's argument. Although respondents do not address this claim, this Court observes that the Notice of Revocation of Release does not identify the changed circumstances and why there was a significant likelihood of petitioner's removal at the time of petitioner's re-detention on July 28, 2026. (ECF No. 7 at 14-15.) Thus, the Notice of Revocation of Release does not demonstrate compliance with § 241.13(i)(3). Respondents provide no

evidence demonstrating that petitioner was provided with other information regarding changed circumstances making his removal significantly more likely. (See ECF No. 7.)

Section 241.13(i)(3) also requires a prompt interview following re-detention: "Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." As discussed above, by failing to address this claim, respondents concede petitioner's argument.

While respondents do not address petitioner's claim that they failed to provide petitioner with an interview following his re-detention, respondents submitted a form titled, "Alien Informal Interview Upon Revocation of Order of Supervision Under 8 C.F.R. § 241.4(1) and 8 C.F.R. § 241.13(i)." (ECF No. 7. at 17.) This form indicates that on July 28, 2026, an ICE officer conducted an informal interview with petitioner in order to afford petitioner an opportunity to respond to the reasons for revocation of his Order of Supervision stated in the notification letter (Id.) This interview did not comply with the regulations because petitioner could not have meaningfully responded to the reasons for the revocation of his release because, as discussed above, petitioner did not receive adequate notice of the changed circumstances based on which his release was revoked.

This Court finds that respondents violated their own regulations, 8 C.F.R. § 241.13. Section 241.13 provides "special review procedures" governing ICE's authority to revoke a removable alien's release in cases where, as here, ICE has (1) previously determined "that there is no significant likelihood of removal in the reasonably foreseeable future," and then (2) subsequently seeks to revoke release based on changed circumstances resulting in a "determin[ation] that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." Id. Courts have held that "where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute ...

and [ICE] fails to adhere to it, the challenged [action] is invalid.'" Rombot, 296 F. Supp. 3d at 388 (quoting Waldron v. I.N.S., 17 F.3d 511, 518 (2d Cir. 1993)); see also Truong v. Noem, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) ("Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered.") (collecting cases).

3. Due Process

This Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). When the government grants a noncitizen parole or supervised release, it creates a protected liberty interest subject to due process clause protection. See Sanchez v. LaRose, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025). These protections include at least notice and an opportunity to be heard regarding the revocation. Id.; Mathews v. Eldridge, 424 U.S. 319, 348 (1976) ("The essence of due process is the requirement that 'a person in jeopardy of a serious loss [be given] notice of the case against him and the opportunity to meet it."). In Saengphet v. Noem, the district court ruled that notices revoking protected liberty interests are constitutionally inadequate when they lack individualized explanations of the changed circumstances giving rise to revocation. See 815 F. Supp. 3d 1142, 1150 (S.D. Cal. Nov. 20, 2025). Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient. See Sanchez, 2025 WL 2770629, at *3; Ying Fong v. Ashcroft, 317 F. Supp. 2d 398, 403 (S.D.N.Y. 2004) ("The opportunity to be heard must be meaningful, that is, an opportunity granted at a meaningful time and in a meaningful manner.") (internal citation omitted). A detainee's opportunity to be heard is not meaningful if the detainee has not been informed of the circumstances of his revoked release in a manner sufficient to allow his response. See Sarail A. v. Bondi, 803 F. Supp. 3d 775, 787 (D. Minn. Sept. 3, 2025).

While this Court recognizes that the government has an interest in enforcing immigration

laws and in public safety, the government's interest in re-detaining petitioner without adequate notice and an opportunity to challenge the revocation of his release is low. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). "That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). Respondents identify no reason why adequate notice "to afford the alien an opportunity to respond to the reasons for revocation stated in the notification" was not provided to petitioner as required by the government's own regulations. See 8 C.F.R. § 241.13(i)(3).

For the reasons discussed above, this Court recommends that the petition be granted as to the due process claim alleging that petitioner's re-detention is unlawful because the government failed to demonstrate changed circumstances establishing a significant likelihood of petitioner's removal to Vietnam in the reasonably foreseeable future, and because the government failed to comply with its own regulations regarding the revocation of petitioner's release set forth at 8 C.F.R. § 241.13(i).

**B. Claims Two and Three: Third Country Removal Claims**

In claim two, petitioner argues that third country removal policies violate the Fifth Amendment, 8 U.S.C. § 1231, the Convention Against Torture, Implementing Regulations and the Administrative Procedure Act. (ECF No. 1 at 14-15.) In claim three, petitioner argues that punitive third country banishment violates the Fifth and Eighth Amendments. (Id. at 15-16.) Respondents do not address these claims. (See ECF No. 7.) For the following reasons, this Court finds that petitioner lacks standing to raise his claims challenging third country removal policies and procedures.

To establish Article III standing, a party must allege an injury that is "concrete and particularized," "actual or imminent," and likely to be "redressed by a favorable" judicial decision. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992). The petition appears to be a form petition and the record before the Court does not indicate that third country removal is currently at issue. (See ECF Nos. 1, 7.) Because nothing before the Court shows any basis for

petitioner's third country removal claims, this Court finds that petitioner lacks standing to raise his third country removal claims at this time, and those claims should be denied.

### C. Petitioner's Other Claims for Relief

Because the Court recommends granting the petition based on claim four for the reasons discussed above, the Court need not address any additional claims raised in the petition. See N.K. v. Noem, No. 1:26-cv-0292 KES SAB, 2026 WL 130345, at *1 (E.D. Cal. Jan. 16, 2026) (granting habeas petition as to the second count of the petition and not addressing other counts because the petitioner was entitled to the relief sought based on the court's ruling as to that second count); Constantinovici v. Bondi, No. 3:25-cv-2405 RBM AHG, 2025 WL 2898985, at *7 (S.D. Cal. Oct. 10, 2025) (granting habeas petition based on due process claim and "declin[ing] to address the remaining grounds in the Petition for seeking release"). Petitioner is entitled to the habeas relief he seeks based on the court's ruling as to claim four.

### D. Remedy

Based on the recommendation that the petition be granted as to claim four, this Court recommends that petitioner be immediately released to return him to the status quo before the pending controversy. See Yang v. Kaiser, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante litem is "the last uncontested status which preceded the pending controversy"). Because petitioner challenges his current re-detention, the last uncontested status of petitioner was his release under the November 15, 2012 Order of Supervision before his re-detention on July 28, 2026.

## V. MOTION FOR APPOINTMENT OF COUNSEL

Petitioner filed a motion for appointment of counsel. (ECF No. 3.) There currently exists no absolute right to appointment of counsel in habeas proceedings. See Nevius v. Sumner, 105 F.3d 453, 460 (9th Cir. 1996). Under 18 U.S.C. § 3006A, the court can appoint counsel at any stage of the case "if the interests of justice so require." See Rule 8(c), Fed. R. Governing § 2254 Cases. Because the Court recommends the petition be granted and petitioner be released, the Court does not find the interests of justice require appointment of counsel at the present time. Petitioner's motion to appoint counsel is therefore denied without prejudice.

## VI. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that petitioner's motion for appointment of counsel (ECF No. 3) is denied without prejudice; and

Further, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED as to claim four (due process and regulatory violation).
2. Petitioner Hung Phi Le (A-041-789-571) be IMMEDIATELY RELEASED from custody under the same conditions he was previously released in his November 15, 2012 Order of Supervision. At the time of release, respondents shall provide petitioner with a copy of these findings and recommendations, the district court's order ruling on these findings and recommendations, and return to petitioner all of petitioner's possessions, including petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.). Respondents be enjoined and restrained from re-detaining petitioner absent compliance with constitutional protections, which include, at a minimum, compliance with the requirements of 8 C.F.R. § 241.13(i) for revocation of release, and any other applicable statutory and regulatory procedures. Because petitioner is proceeding pro se, respondents be further directed to file a status report within **seven (7) days** from the date of his release.
3. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven** days after service of the objections. The parties are advised that

///

///

failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 2, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Le7699.imm.157.RELEASE/2